STATE OF CONNECTICUT *v.* FRANKLIN BRIGGS
(6446)

SPALLONE, STOUGHTON and NORCOTT, Js.

Argued December 6, 1988—decision released March 14, 1989

*John T. Walkley,* special public defender, for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom, on the brief, were *Roland Fasano,* assistant state's attorney, and *Pamela Weidman,* law student intern, for the appellee (state).

STOUGHTON, J. The defendant appeals from a judgment of conviction rendered after a jury verdict of guilty on both counts of a substitute information. The first count charged the defendant with robbery in the first degree, a violation of General Statutes § 53a-134 (a) (2). The second count charged conspiracy to commit robbery in the first degree, in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2).

The defendant claims that the trial court erred (1) in failing to give the jury an adverse inference charge on the state's failure to call a key witness, (2) in denying his motion for a mistrial that he based on the state's failure to call a key witness, (3) in allowing into evidence hearsay statements of a coconspirator who was not produced at trial, (4) in admitting evidence as to the time and place of the defendant's arrest, (5) in its instructions to the jury, and (6) in denying his motions for acquittal and to set aside the verdict. We find no error.

Upon the trial of this case, the jury reasonably might have found the following facts. On January 8, 1986, at about 5:30 p.m., Richard Morris was alone in his gasoline station and convenience store in New Haven when the defendant and another man[1] entered, armed with a shotgun and a handgun. One of the men took money from the cash register and from the pockets of the victim, a total of $213, and the two men fled to a waiting car driven by Arnold Colwell. A nearby resident had

---

[1] This man was later identified as Silas Harris.

noticed the car and had taken part of the registration number earlier in the day. He saw the two men run from the store to the waiting car. When the police arrived, he gave a description of the car and the partial registration number, and these were broadcast on the police radio.

The car was a shiny black Camaro with "Z28" emblazoned on it. About one hour after the robbery, the police spotted the car. There were three people in it. After a chase, the police succeeded in stopping the car and arresting the driver, but the two passengers fled. Before escaping, the shorter passenger, later identified as the defendant, turned and for several seconds looked directly at Arthur Griffith, a policeman in a patrol car. The driver was identified as Colwell. The police searched the car and seized a blue denim coat, a brown shoulder bag that contained a sawed-off shotgun, and live ammunition. The defendant's fingerprints also were found in the car.

Griffith testified that at the time of the robbery he did not know the defendant's name, but that several weeks later he observed the defendant's picture on a wanted poster that gave his name as Franklin Briggs. Detective Everett C. Nichols, who had been involved in Colwell's arrest, testified that on the night of the robbery Griffith had given him a description of the two fleeing men. Nichols also testified that Griffith never had informed him that he had gotten a face to face look at the defendant. The defendant was not apprehended until almost a year later, when he was arrested at a motel in Berlin.

After Colwell was arrested, he agreed to cooperate with the state at the defendant's trial. At that trial, Colwell was subpoenaed by the state. He appeared in court on the designated day, but he was not called as a witness that day. Colwell failed to return to court

thereafter. When the state realized that Colwell had not returned, it sent an inspector to search for him. The state's attempts to locate Colwell were fruitless. At trial, Colwell's wife testified that immediately before the robbery she had been in her husband's car with Colwell, Silas Harris, and the defendant. She also testified that she did not know the current whereabouts of her husband. The trial court offered the defendant a continuance in order to allow the state more time to locate Colwell. The defendant declined and stated, "I don't want a continuance; I want a mistrial."[2]

The defendant's first claim is that the trial court erred in failing to charge the jury that it could draw an adverse inference from the failure of the state to produce Colwell at trial. See *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960). In order to establish that he was entitled to such an instruction, a party must show (1) that the witness was available, and (2) that the witness was one whom the opposing party would naturally have produced. *Secondino* v. *New Haven Gas Co.*, supra, 674–75; *McGloin* v. *Southington*, 15 Conn. App. 668, 672, 546 A.2d 908 (1988). To satisfy the availability prong of *Secondino*, " 'it must be shown that the party was able to procure the witness' *physical presence in court.*' (Emphasis added.) *Shelnitz* v. *Greenberg*, 200 Conn. 58, 74–75, 509 A.2d 1023 (1986)." *State* v. *Wood*, 208 Conn. 125, 140, 545 A.2d 1026, cert. denied,      U.S.     , 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); *McGloin* v. *Southington*, supra, 673.

The defendant has not satisfied the availability prong of *Secondino* because he failed to produce any evidence that the state was able to procure Colwell's physical presence at trial. The record reveals that Colwell was

---

[2] This discussion took place outside of the presence of the jury. The defendant told the trial court that Colwell had previously testified for the state in its case against Harris.

under subpoena to appear as a witness and that the state clearly was surprised by Colwell's failure to appear. There was no evidence to show that the state had the ability to procure the witness. It was the defendant's burden to show this availability; *State* v. *Amarillo,* 198 Conn. 285, 307, 503 A.2d 146 (1986); and he has failed to do this. There is no merit to this claim.

In his second claim, the defendant contends that the trial court erred in denying his motion for a mistrial after the state rested its case without calling Colwell to the stand. The defendant predicated his request for a mistrial on the fact that hearsay statements from Colwell had been allowed into evidence and used by the state against the defendant. While acknowledging that he did not object to these statements at the time they were made, the defendant asserts that at the time of trial he fully expected Colwell to testify. Griffith's testimony was as follows:

"[State's attorney] Q. And to your knowledge did Detective Nichols speak to Arnold Colwell, the one who was apprehended?

"[Griffith] A. Yes, he did.

"Q. And was that the source of the information with respect to the other two names?

"A. I believe it was."

The testimony of Nichols was as follows:

"[State's attorney] Q. And did [Colwell] identify the persons whose names he gave you by photo?

"[Nichols] A. Yes, sir, he did.

"Q. And who were the two persons?

"A. Franklin Briggs and Silas Harris."

On redirect, the state elicited the following testimony from Nichols:

"[State's attorney] Q. Did you inquire into who, did you ask him who the two men were who fled the vehicle?

"[Nichols] A. Yes.

"Q. And his response to that was what?

"A. Frank Briggs and somebody he just met by the name of China.

"Q. The names he gave you was Franklin Briggs who he had known, is that right?

"A. Yes.

\* \* \*

"Q. And he positively identified two of those photos, is that correct?

"A. Yes, sir.

"Q. And that was Franklin Briggs?

"A. And Silas Harris."

The defendant contends that because of these statements, he was denied a fair trial and a mistrial should have been granted. We disagree. "A mistrial is an extreme remedy and is warranted only where it is apparent that as a result of some occurrence during trial a party has been deprived of an opportunity for a fair trial. *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 915 (1982); *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982); *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980)." *State* v. *Ridley,* 7 Conn. App. 503, 513, 509 A.2d 546, cert. denied, 201 Conn. 803, 513 A.2d 698 (1986). The decision to declare

a mistrial lies in the court's discretion and the burden is on the party requesting a mistrial to show that he has been denied a fair trial. Id.

The defendant, in effect, is claiming that the alleged hearsay statements became objectionable and prejudicial only after it became apparent that Colwell would not testify. Since the defendant did not object to these statements at trial, he cannot now claim that he was denied a fair trial by their admission. Moreover, the defendant never asked the trial court to strike the statements or for a curative instruction to the jury. Furthermore, the defendant was offered a continuance in order that an effort might be made to try to find Colwell, but he declined the offer. There is no merit to this claim.

The defendant's third claim is that the trial court erred in allowing into evidence through a police witness the statements made by a coconspirator who was not produced at trial. The defendant did not object to these statements at the time of trial, but seeks review under *State* v. *Evans*, 165 Conn. 61, 71, 327 A.2d 576 (1973), based on violations of his right to confrontation. See *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). The defendant bases this claim, as he did his motion for mistrial, on statements made by Colwell to Griffith and Nichols and introduced through the officers during their testimony.

In *Bruton* v. *United States*, the United States Supreme Court held that the confession of a nontestifying codefendant that expressly implicates the defendant is inadmissible at a defendant's trial because it violates a defendant's confrontation rights. As the court has made clear, *Bruton* is limited to those confessions that are incriminating on their face in that they "expressly implicate" the defendant in the actual commission of the crime. *Richardson* v. *Marsh*, 481 U.S.

200, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987); see also *State* v. *Smith,* 15 Conn. App. 122, 129–30, 543 A.2d 301 (1988).

The testimony that the defendant complains of does not "expressly implicate" him in the commission of the crime, but merely places him in the car with Colwell at the time the car was stopped. This is not a *Bruton* statement. It is not a constitutional claim but an evidentiary issue, and since the testimony has not undermined the defendant's opportunity for a fair trial, we decline to review this claim of error. See *State* v. *Veal,* 201 Conn. 368, 376, 517 A.2d 615 (1986).

The defendant's next claim is that the trial court erred in admitting into evidence the time and place of the defendant's arrest. He claims that the prejudicial effect of the evidence outweighed its probative value because the evidence was completely without probative value.

The trial court allowed the testimony because it was relevant to the issue of flight. "Flight, when unexplained, tends to prove a consciousness of guilt." *State* v. *Ferrara,* 176 Conn. 508, 516, 408 A.2d 265 (1979); see also *State* v. *Holloway,* 209 Conn. 636, 651, 553 A.2d 166 (1989). The defendant claims that in this case, the issue of flight was not relevant because at the time of his arrest, numerous warrants stemming from other charges had been issued against him.[3] Consequently, he argues, his flight might well have been due to consciousness of guilt on other charges. We disagree.

A trial court has wide discretion in its rulings on relevancy. *State* v. *Gold,* 180 Conn. 619, 646, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). Here, the time and place of the

[3] The trial court ordered that no reference be made to the other warrants issued against the defendant.

defendant's arrest tended in some degree to show flight from this crime and, hence, the trial court did not err in allowing such evidence.

The defendant also claims that the evidence was unfairly prejudicial because he was unable to rebut the issue of flight without bringing into evidence the existence of the other warrants for which he was being sought. That was a tactical decision he made at trial. The defendant's difficulty was of his own doing and is not attributable to the trial court. It is a risk he assumed. There is no merit to this claim.

The defendant's fifth claim is that the trial court erred in its instructions to the jury. The defendant claims the charge unfairly emphasized the state's evidentiary claims and failed to accord his claims a fair review. Specifically, the defendant points to the instructions concerning the defendant's flight, Colwell's statements, and the fingerprint evidence. We will not review this claim because the defendant failed to raise these issues at the trial level and has not briefed a claim of entitlement to review under either *State* v. *Evans,* supra, or Practice Book § 4185.

At trial, the defendant's only objection to the jury instructions was based upon the fact that he felt that an inconsistent statement by Griffith was not brought sufficiently to the attention of the jury. He was referring to the testimony by Nichols that Griffith never had told him that he had had a face to face encounter with the defendant. We find that Griffith's allegedly inconsistent testimony was adequately summarized by the trial court. There is no merit to this claim.

The defendant's final claim is that the trial court erred in denying his motions for acquittal and to set aside the verdict. He claims that the state's evidence was extremely weak and speculative. In reviewing a challenge to the sufficiency of the evidence, we con-

sider whether, on the basis of the evidence at trial and the proper inferences to be drawn therefrom, a jury could reasonably conclude that the defendant was guilty beyond a reasonable doubt. See *State* v. *LoSacco,* 12 Conn. App. 172, 174, 529 A.2d 1348 (1987). In this case there was more than sufficient evidence from which the jury could conclude that the defendant was guilty. There is no merit to this claim.

There is no error.

In this opinion the other judges concurred.