# STATE OF CONNECTICUT *v.* ROLANDO CRUZ
# (SC 16990)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued February 18—officially released May 25, 2004

*Alice Osedach-Powers*, assistant public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David Strollo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. In this certified appeal, the defendant, Rolando Cruz, appeals from the judgment of the Appellate Court affirming the trial court's judgment of conviction of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] See *State* v. *Cruz*, 75 Conn. App. 500, 816 A.2d 683 (2003). On appeal to this court, the defendant claims that the Appellate Court improperly concluded that he could not prevail on the merits of his unpreserved claim that a jury instruction on self-defense, which he requested, was constitutionally infirm under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). As an alternate ground for affirmance, the state claims that the Appellate Court should not have reviewed the defendant's unpreserved claim under *Golding* because *Golding* review is inapplicable to an error induced by the defendant regardless of its alleged

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

unconstitutionality.[2] We agree with the state that *Golding* analysis cannot be used to review unpreserved claims of induced errors, and accordingly, we affirm the judgment of the Appellate Court on this alternate ground.

The Appellate Court set forth the following facts and procedural history. "On a Thursday evening in late July, 1999, the defendant went to Gecko's, a nightclub in New Haven. While at Gecko's, the defendant was having a conversation with a woman, Adrienne DeLeon. At some point during their conversation, the defendant and DeLeon were approached by DeLeon's then boyfriend, Joseph Martinez. Martinez, who believed that the defendant was flirting with DeLeon, threw a drink in her face and began screaming at DeLeon and at the defendant. Martinez and the defendant engaged in a verbal dispute, but no physical altercation occurred between the two men that night.

"On the following Sunday night, August 1, 1999, the defendant was at Humphrey's restaurant in New Haven. Martinez also was at Humphrey's that night with his friend, Peter Gaudioso. After seeing the defendant from across the room, Martinez pointed out the defendant to Gaudioso and informed him of the verbal altercation that he had had with the defendant only a few nights before. Gaudioso suggested that he and Martinez leave the restaurant to avoid another altercation. Shortly thereafter, Gaudioso and Martinez exited the front door of the restaurant where they encountered the defen-

---

[2] Although the state failed to present its claim as an alternate ground for affirmance under Practice Book § 84-11 (c), "we have refused to consider an issue not contained in a preliminary statement of issues only in cases in which the opposing party would be prejudiced by consideration of the issue." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 335 n.2, 757 A.2d 561 (2000). In the present case, the defendant has not argued that he was prejudiced by the state's failure to file a preliminary statement of issues. We therefore consider the state's alternate ground to affirm.

dant, who was standing outside talking on his cellular telephone. Martinez approached the defendant because he thought he heard the defendant call him a derogatory name. The two men began to argue. The defendant told Martinez: 'You don't want to do this, you will regret it for the rest of your life.' Shortly thereafter, punches began to be thrown by both men. The fight spilled over into the parking lot of the restaurant, between two parked cars. At some point during the fight, the defendant took a knife out of his pocket, stabbed Martinez once in the stomach and then ran away. The fight had lasted only a matter of minutes. . . .

"The defendant subsequently was arrested and charged with one count of assault in the first degree in violation of § 53a-59 (a) (1) and, in the alternative, one count of assault in the first degree in violation of § 53a-59 (a) (3)."[3] *State* v. *Cruz*, supra, 75 Conn. App. 502–503. "At trial, the defendant claimed that he was acting in self-defense when he stabbed Martinez and, therefore, his use of force was justified. See General Statutes § 53a-19.[4] The defendant testified that he

---

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[4] General Statutes § 53a-19 provides: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person

stabbed the victim, but that he believed that his use of force was necessary to defend himself from the victim's attack." Id., 504–505.

The Appellate Court also set forth the following procedural history, which was necessary for its disposition of the defendant's claim of self-defense. "The defendant submitted a request to charge on the issue of self-defense. [He] requested that the court's charge to the jury include the following: 'A defendant claiming justification of self-defense is permitted to use deadly force in two broad circumstances. He may justifiably use deadly force only if he reasonably believed that the other person was either using, or about to use, deadly physical force, or inflicting, or about to inflict great bodily harm.

" 'In this case, we are talking about the use of deadly physical force by the defendant. It is therefore the last portion of that section of the statute on self-defense that is implicated in this case, and I'm going to read it to you.' . . .

"The court held a charging conference with counsel. Just prior to closing argument, the court asked counsel if there was anything either of them wanted to put on the record concerning their jury charge conference.

assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

Defense counsel responded that there was not. After closing arguments, the court stated to counsel: 'You have the self-defense charge that we discussed, and I gather you both read it and agree that it comports with our—the content of our charge conference.' Defense counsel responded: 'The defense agrees, Your Honor.' Thereafter, the court instructed [the jury] on the applicable law. In its self-defense charge, the court included the exact language that the defendant had requested and now challenges on appeal. After the court excused the jury to begin its deliberations, the court asked counsel if there were any objections to the jury charge. Defense counsel indicated that he had no objection." Id., 508–509.

"During its deliberations, the jury asked to hear the legal definition of self-defense again. The jury returned a guilty verdict on the charge of assault in the first degree in violation of § 53a-59 (a) (1) and a verdict of not guilty on the charge of assault in the first degree in violation of § 53a-59 (a) (3). After the jury's verdict, defense counsel filed a motion for a judgment of acquittal in which he claimed that the evidence adduced at trial established that the defendant had acted in self-defense and that the state had failed to adduce evidence sufficient to disprove self-defense. In denying the defendant's motion, the court determined that if the jury had accepted the testimony of Martinez, the defendant's self-defense claim was disproved beyond a reasonable doubt." Id., 505. Thereafter, the trial court rendered a judgment of conviction in accordance with the jury's verdict.[5]

The defendant subsequently appealed from the trial court's judgment to the Appellate Court, claiming, inter alia, that the trial court improperly instructed the jury

---

[5] The defendant was sentenced to seven and one-half years imprisonment, followed by special parole for a period of seven and one-half years.

on the issue of self-defense. Specifically, the defendant claimed, for the first time, that the trial court violated his constitutional rights to present a defense, to due process, and to a fair trial under the sixth and fourteenth amendments to the United States constitution by instructing the jury only on the use of *deadly* force, thereby removing the issue of whether he was justified in using *nondeadly* force from the jury's consideration. Id., 505, 508; see also General Statutes § 53a-19. Relying on language from a footnote[6] in our decision in *State* v. *Whipper*, 258 Conn. 229, 295 n.31, 780 A.2d 53 (2001), the Appellate Court engaged in an analysis of the defendant's unpreserved claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, and concluded that, although the claim satisfied the first two prongs of *Golding*, it could not satisfy the third prong, namely, that a constitutional violation clearly existed and deprived him of a fair trial, because the claimed error was induced by the defendant. *State* v. *Cruz*, supra, 75 Conn. App. 507, 512. The Appellate Court therefore affirmed the judgment of conviction. Id., 521.

Thereafter, we granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that, with respect to the challenged instruction on the issue of self-defense, the defendant could not prevail under *State* v. *Golding*, [supra, 213 Conn. 233]?" *State* v. *Cruz*, 263 Conn. 921, 822 A.2d 243 (2003). This appeal followed.

In this court, the defendant claims that the Appellate Court improperly concluded that, with respect to the challenged jury instruction, the defendant could not prevail under the third prong of *Golding*. Specifically,

[6] In *State* v. *Whipper*, supra, 258 Conn. 295 n.31, we stated: "Although error induced by an appellant cannot be a ground for reversal and will not be reviewed; *State* v. *Hinckley*, 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985); where the claim is of constitutional magnitude, it may be reviewed pursuant to *Golding*." (Internal quotation marks omitted.)

the defendant claims that the Appellate Court's decision contravened this court's decision in *State* v. *Whipper*, supra, 258 Conn. 229, and effectively created a per se rule prohibiting review of the merits of induced error claims. The state, as an alternate ground for affirmance, maintains that *Golding* is inapplicable to induced error claims and, to the extent that *Whipper* can be read to suggest that such claims are entitled to review pursuant to *Golding*, it should be overruled. We agree with the state that *Golding* analysis cannot be used to review unpreserved claims of induced error regardless of the alleged constitutional nature of the error. We therefore affirm the judgment of the Appellate Court on the alternate ground.

We begin our analysis by setting forth the applicable standard of review. Whether the Appellate Court properly employed *Golding* review presents a question of law over which our review is plenary. See *Kelo* v. *New London*, 268 Conn. 1, 75, 843 A.2d 500 (2004).

The *Golding* framework is well established. "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . . This court may dispose of the claim on any one of the conditions that the defendant does not meet." (Internal quota-

tion marks omitted.) *State* v. *Vines*, 268 Conn. 239, 242–43 n.2, 842 A.2d 1086 (2004).

In the present case, the defendant challenges the very jury instruction that he requested from the trial court.[7] "This situation is in the nature of induced error."[8] *State* v. *Edwards*, 39 Conn. App. 242, 251, 665 A.2d 611, cert. denied, 235 Conn. 924, 925, 666 A.2d 1186, 1187 (1995). It is well established that a party who induces an error cannot be heard to later complain about that error. See, e.g., *State* v. *Walton*, 227 Conn. 32, 67, 630 A.2d 990 (1993) ("no review is warranted because [the defendant] induced the error"); *State* v. *Hinckley*, 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985) ("[w]e have held that error induced by an appellant cannot be a ground for reversal and will not be reviewed"); *State* v. *Ross*, 189 Conn. 42, 47, 454 A.2d 266 (1983) ("[a]n appellant cannot ordinarily claim error in the action of the trial court which he has induced"); *State* v. *Edwards*, supra, 251 ("[a]ctions that are induced by a party ordinarily cannot be grounds for error").

In the present case, the Appellate Court aptly recognized this principle, but then, relying on a footnote in this court's decision in *Whipper*, stated that, "[a]lthough

[7] We reject the defendant's claim that the Appellate Court improperly labeled his failure to request language regarding the use of nondeadly force as a "concession." Regardless of the characterization employed, the defendant submitted his request to charge, discussed the request to charge in conference with the court and opposing counsel and stated that he had no objection following the trial court's delivery of the charge to the jury. See *State* v. *Cruz*, supra, 75 Conn. App. 509. Moreover, in the defendant's request to charge, he requested, and the trial court used, the phrase, "[i]n this case we are talking about the use of *deadly* physical force by the defendant." (Emphasis added.) Thus, by affirmatively requesting language of *deadly* force to the exclusion of language of *nondeadly* force, the defendant induced the claimed error.

[8] An induced error, or invited error, is "[a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling." Black's Law Dictionary (7th Ed. 1999).

it is the general rule that a party who induces an error cannot be heard to complain about that error, unpreserved claims of constitutional magnitude, even when induced by the appellant, may be reviewed pursuant to [*Golding*]." *State* v. *Cruz*, supra, 75 Conn. App. 507, citing *State* v. *Whipper*, supra, 258 Conn. 295 n.31. On the basis of this language from *Whipper*, the Appellate Court concluded that *Golding* review was appropriate for the defendant's unpreserved, induced error claim. *State* v. *Cruz*, supra, 506–507 n.8. The Appellate Court went on to conclude, however, that "the defendant has failed to satisfy the third prong of *Golding* because he has failed to establish that a constitutional violation clearly exists and clearly deprived him of a fair trial." Id., 512.

We first note that the error claimed by the defendant in *Whipper* differs from that raised in the present case. In *Whipper*, the defendant challenged, inter alia, the trial court's *addition* of language to the reasonable doubt charge requested by the defendant. Specifically, the defendant claimed that, although much of the jury charge comported with the defendant's request to charge, the trial court's *addition* of the phrase "settled and abiding belief" improperly diluted the state's burden of proof. *State* v. *Whipper*, supra, 258 Conn. 294. In the present case, the challenged jury instruction repeated the *exact* language that the defendant had requested.

To the extent that *Whipper* suggests that *Golding* review is available for unpreserved claims of induced error, however, it is overruled. "To allow [a] defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.) *State* v. *Cooper*, 38 Conn. App. 661, 670, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d

903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996). Accordingly, we affirm the judgment of the Appellate Court, albeit on a ground different from that relied on by the Appellate Court, namely, that the defendant is not entitled to review of his claim of induced impropriety because he requested the very jury instruction that he now challenges.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.