## TONY E. GIBSON *v.* COMMISSIONER
## OF CORRECTION
## (AC 29386)

DiPentima, Lavine and Freedman, Js.

Argued September 11, 2009—officially released January 19, 2010

*David B. Rozwaski*, special public defender, for the appellant (petitioner).

*Frederick W. Fawcett*, special assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Gerard P. Eisenman*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FREEDMAN, J. The petitioner, Tony E. Gibson, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying certification to appeal and improperly determined that his trial counsel had rendered effective assistance. We conclude that under the circumstances of this case, in which the principal issue involved the question of induced error versus sound trial strategy, the habeas court abused its discretion in denying certification to appeal. We agree, however, with the court's determination that the petitioner's trial counsel rendered effective assistance. Accordingly, we affirm the judgment of the habeas court.

The facts and procedural history underlying the petitioner's appeal have been recounted in prior decisions

of this court and our Supreme Court. "The [petitioner] was charged in a five count information with five separate crimes involving C, J and I, three of the daughters of P, to whom the [petitioner] had been engaged. With respect to C, who was eight years old when the crimes were committed, the [petitioner] was charged with sexual assault in the first degree in violation of General Statutes (Rev. to 1999) § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2). With respect to J, who was thirteen years old when the crimes were committed, the [petitioner] was charged with sexual assault in the second degree in violation of General Statutes (Rev. to 1999) § 53a-71 (a) (1) and risk of injury to a child in violation of § 53-21 (2). With respect to I, who was thirteen years old when the crimes were committed, the [petitioner] was charged with threatening in violation of General Statutes (Rev. to 1999) § 53a-62 (a) (1). The [petitioner] was convicted of all five crimes and received a total effective sentence of twenty years imprisonment, execution suspended after sixteen years, and twenty-five years probation." *State* v. *Gibson*, 270 Conn. 55, 58–59, 850 A.2d 1040 (2004).

In *State* v. *Gibson*, 75 Conn. App. 103, 106–109, 815 A.2d 172 (2003), rev'd in part, 270 Conn. 55, 850 A.2d 1040 (2004), this court determined that the jury reasonably could have found the following facts that are relevant to the present appeal. "The [petitioner] occasionally stayed overnight at the family home of [P, who is] the mother of the three victims of the crimes with which the [petitioner] was accused. . . . [On the morning in question], after her mother had left, J was in her room when the [petitioner] called her into her mother's bedroom. The [petitioner] told [J] to sit on the bed, which she did. He then removed her pants and pulled her underpants down to her knees. He inserted his penis into her vagina. She was on her back and he

was on top of her, moving back and forth. I . . . saw J lying on her back with her legs spread and the [petitioner] on top of her, moving back and forth. J had on a top, but no pants or underpants, and the [petitioner] was wearing only a shirt. I went to a fourth sister's room and told her what she had just seen. . . .

"The information alleged that all of the crimes took place during the 'early morning hours' or the 'morning hours' of August 7, 2000. Over the objection of the [petitioner], J testified that on more than one occasion prior to August 7, 2000, at her home, when her mother was not there, the [petitioner] engaged in sexual intercourse with her. The state acknowledges that those occasions occurred one or two years prior to August 7, 2000. On some of the occasions, the [petitioner] had given [J] money afterward, with which she bought candy.

"The state sought the admission of the prior acts . . . to [prove a] common scheme and motive, and the testimony was admitted by the court 'for purposes of showing a common design and limited to that.' Before [J] testified . . . the court stated [outside of the presence of the jury] that it would admit her testimony but that '[it would] give some cautionary instructions to the jury' as to the proper use of the testimony. The day after the testimony, not having yet given such instructions, the court again stated that it would give such an instruction to tell the jury that the testimony was offered for the purpose of showing 'a common design and limited to that.' Later that same day, the court asked the [petitioner] if he wanted such an instruction and [counsel for the petitioner] answered: 'It's the position of the [petitioner] that the prejudicial impact of [the testimony] so outweighs the probative value . . . that the [petitioner] feels no amount of cautionary instructions would help.' [Counsel for the petitioner] then requested a mistrial, which the court denied. The court then

stated: 'I'm not going to give an instruction, then. [The petitioner] has . . . requested that I not do so, all right? All right.' The court also stated that it might 'address [the issue]' during the course 'of the charge to the jury.'

"The court gave no instruction during the trial, or in its final instruction to the jury, as to the proper use of the evidence of the prior uncharged misconduct, which had occurred one or two years before August 7, 2000." *State* v. *Gibson*, supra, 75 Conn. App. 106–109.

"In its final instructions, however, the court advised the jury as to the element of time: 'The state has alleged that the [petitioner] committed these crimes at a certain time. It is not essential in a criminal prosecution . . . that a crime be proved to have been committed at a precise time alleged. It is sufficient for the state to prove the commission of the crime at any . . . time prior to the date of the complaint within the statute of limitations. Time is not an essential element of the offense.' The [petitioner] did not take exception to any portion of the charge or file a written request to charge, pursuant to Practice Book § 42-16, seeking a limiting instruction as to the use of the prior uncharged misconduct evidence.

"During its deliberations, the jury sent a note to the court asking when the [petitioner] had committed the first of the several acts of prior uncharged misconduct described by J. The court responded that there had been no testimony regarding when the prior acts had taken place other than that they had occurred before August 7, 2000. The jury then completed its deliberations and returned a verdict of guilty on all five counts." *State* v. *Gibson*, supra, 270 Conn. 63–64.

On direct appeal to this court, the petitioner claimed, as to the sexual assault in the second degree and risk of injury charges involving J, that the omission of a

limiting instruction, when combined with the nonspecific language of the court's instruction as to the time that the crimes were committed, absolved the state of having to prove the crimes charged. *State* v. *Gibson,* supra, 75 Conn. App. 115. The petitioner argued that his claim was constitutional because the instruction compromised his right under the sixth amendment to the United States constitution to be informed of the nature and cause of the charges against him and his due process right to a unanimous verdict. Id., 117. The petitioner sought review of this claim pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine, as embodied in Practice Book § 60-5. *State* v. *Gibson,* supra, 117.

This court first determined that the petitioner's claim raised a sixth amendment issue that warranted review under *Golding.* Id., 118. It next concluded, with respect to the petitioner's conviction of sexual assault in the second degree, that "[t]he lack of a limiting instruction was exacerbated by the instruction of the court that the [petitioner] could be found guilty without any need for the state to prove the commission of the crime at the precise time alleged and that it was sufficient for the state to prove the commission of the crime . . . at any time prior to the date of the complaint . . . . The combination almost surely guarantee[d] a verdict of guilt . . . because the uncharged misconduct evidence was likely used by the jury for the substantive purpose of proving the charged crime . . . ." (Citation omitted; internal quotation marks omitted.) Id., 120. This court reached a similar conclusion with respect to the count charging the petitioner with risk of injury to a child as to J.[1] This court, therefore, reversed the petitioner's

---

[1] This court stated in *Gibson* that "[a]lthough the two crimes alleged in the third and fourth counts, both involving J, are separate for the purposes of prosecution, they are so closely intertwined on the facts of this case that the conclusion that a new trial must be had as to the sexual assault in the second degree charge requires the same conclusion as to the charge of risk of injury to a child." *State* v. *Gibson,* supra, 75 Conn. App. 121.

conviction of sexual assault in the second degree and risk of injury to a child with respect to J and ordered a new trial on those counts. Id., 133.

Following our Supreme Court's grant of certification, the state appealed from the Appellate Court's judgment to the Supreme Court, which reversed the judgment in part and remanded the case to this court with direction to render judgment affirming the trial court's judgment. *State* v. *Gibson*, supra, 270 Conn. 69. The Supreme Court concluded that even if the trial court's failure to give a limiting instruction as to the prior uncharged misconduct evidence was error, such error was induced by the petitioner. Id., 66. Specifically, the Supreme Court "conclude[d] that any error stemming from the trial court's failure to give a limiting instruction on the uncharged misconduct evidence was induced because the [petitioner] encouraged or prompted the court to refrain from giving such an instruction despite the court's attempts to elicit from the [petitioner] his permission to do so. . . . Consequently, the [petitioner] may not cite the absence of a limiting instruction as a basis for the reversal of his conviction of second degree assault and risk of injury to a child with respect to J." (Citation omitted.) Id., 68.

The petitioner subsequently filed an amended petition for a writ of habeas corpus, alleging, inter alia, that his trial counsel was ineffective in that he failed to accept the trial court's offer to charge the jury on the proper use of the prior uncharged sexual misconduct evidence.[2] The petitioner alleged that but for trial counsel's refusal to accept the trial court's offer of a limiting

[2] The petitioner also alleged that trial counsel was ineffective in that counsel (1) failed to explain the trial process including the probable cause hearing, (2) failed to explain his defense strategy, (3) failed to investigate the information given to him by the petitioner that would show the petitioner's innocence, (4) failed to cross-examine the state's witnesses effectively and (5) advised the petitioner that he had no control over the jury selection process. No evidence was presented at the habeas trial regarding trial counsel's alleged failure to explain the trial process or to investigate. The court,

instruction, our Supreme Court would not have reversed the decision of this court. The habeas court found that the petitioner had failed to overcome the presumption that the trial counsel's failure to request a limiting instruction was sound trial strategy. The court further found that even if it assumed deficient performance by counsel, the petitioner had failed to show that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. The habeas court therefore denied the petition for a writ of habeas corpus and thereafter denied the petition for certification to appeal from its decision. This appeal followed. Additional facts will be set forth as necessary.

I

The petitioner argues that the court abused its discretion in denying certification for review. He contends that the issue of whether trial counsel effectively represented him is an issue that is debatable among jurists of reason and deserves encouragement to proceed further, and, therefore, certification should have been granted. We agree.

"We begin with the well established standard of review. Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court *could* resolve the issues [in a different manner] . . .

therefore, deemed these allegations abandoned. As to the remaining allegations of ineffective assistance of trial counsel, the court found that the petitioner could not prevail because he had not presented any credible evidence in support of those allegations. The petitioner does not challenge this conclusion on appeal.

The habeas petition also raised a claim of actual innocence. The petitioner, however, withdrew this count at the outset of trial.

or . . . the questions are adequate to deserve encouragement to proceed further. . . . Id., 616, quoting *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Crespo* v. *Commissioner of Correction*, 292 Conn. 804, 811, 975 A.2d 42 (2009).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria identified in [*Lozada* v. *Deeds*, supra, 498 U.S. 432] and adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed [and the appeal dismissed]." (Internal quotation marks omitted.) Id., 812.

Both this court and our Supreme Court have considered the circumstances surrounding the failure of the trial court to give a limiting instruction as to uncharged misconduct. This court held that "[t]he failure of the court to give any instruction to the jury as to the proper use of the uncharged misconduct evidence, in combination with its instruction as to time, could have no other consequence than to mislead the jury" and "almost surely guarantee[d] a verdict of guilt." (Internal quotation marks omitted.) *State* v. *Gibson*, supra, 75 Conn.

App. 120. This court noted "[t]hat such a result ensued is shown by the fact that the jury asked about how old the victim was the first time that the [petitioner] had engaged in sexual intercourse with her. Her age at the prior time was not relevant to whether he had engaged in sexual intercourse with her on August 7, 2000, or her age on August 7, 2000." Id. The Supreme Court reversed the judgment, concluding that the petitioner had induced the error by encouraging or prompting the court to refrain from giving such an instruction despite the court's attempts to elicit from the petitioner his permission to do so. *State* v. *Gibson*, supra, 270 Conn. 68. Relying on *State* v. *Cruz*, 269 Conn. 97, 848 A.2d 445 (2004), the Supreme Court held that *Golding* review cannot be used to evaluate unpreserved claims of induced error.[3] The petitioner here essentially is arguing that the reversal of this court's judgment by our Supreme Court, on the basis of its conclusion that the petitioner's counsel had induced the failure to give a limiting instruction as to the uncharged misconduct, amounts to a per se finding of ineffective assistance of counsel. Because this question regarding induced error versus sound trial strategy deserved encouragement to proceed further, the petitioner's petition for certification should have been granted. See *Simms* v. *Warden*, supra, 230 Conn. 616; *Robinson* v. *Commissioner of Correction*, 62 Conn. App. 429, 435–36, 771 A.2d 952 (whether counsel should have applied for youthful offender treatment was issue debatable among reasonable jurists), cert. denied, 257 Conn. 902, 777 A.2d 194 (2001). We, therefore, proceed to a full review of the merits of the petitioner's appeal.

---

[3] In *Gibson*, our Supreme Court noted that *Cruz* had overruled the principle that review of induced error is permissible under *Golding*. *State* v. *Gibson*, supra, 270 Conn. 67. We note that this court's decision in *Gibson* was released prior to our Supreme Court's decision in *Cruz*.

## II

As stated previously, the petitioner claims that the habeas court improperly determined that he received effective assistance of counsel because his trial counsel declined the court's invitation to give a limiting instruction regarding the use of prior uncharged misconduct evidence. We disagree.

"When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Dwyer* v. *Commissioner of Correction*, 69 Conn. App. 551, 561, 796 A.2d 1212, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The first prong is satisfied by proving that counsel made errors so serious that he was not functioning as the counsel guaranteed by the sixth amendment. The second prong is satisfied if it is demonstrated that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Mejia* v. *Commissioner of Correction*, 112 Conn. App. 137, 145, 962 A.2d 148, cert. denied, 291 Conn. 910, 969 A.2d 171 (2009). "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to

meet either prong." (Internal quotation marks omitted.) *Weinberg* v. *Commissioner of Correction*, 112 Conn. App. 100, 107, 962 A.2d 155, cert. denied, 291 Conn. 904, 967 A.2d 1221 (2009).

Before we review whether counsel provided effective assistance to the petitioner, we note: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 512–13, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. . . . [A] court making the prejudice inquiry must ask if the defendant has met the burden

of showing that the decision reached would reasonably likely have been different absent the errors. . . . To establish prejudice, the petitioner must show that as a result of that [deficient] performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in [the] appeal." (Citation omitted; internal quotation marks omitted.) *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 621, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999).

With the foregoing principles in mind, we now consider the petitioner's claim of ineffective assistance of trial counsel. The evidence before the court consisted of the criminal trial transcripts and the petitioner's testimony. A review of the criminal trial transcripts reveals that although counsel did not request a limiting instruction with regard to J's testimony concerning the petitioner's prior misconduct, he did object to the admissibility of this evidence. Specifically, counsel argued that he was surprised by the testimony, that it was irrelevant and that it was extremely prejudicial. The following day, when counsel declined the court's offer of a limiting instruction as to this evidence, he indicated that it was the position of the defense that the prejudicial impact of the testimony so outweighed the probative value that no amount of cautionary instructions would help. He then requested a mistrial, which the court denied.

The habeas court found that the petitioner had failed to overcome the presumption that trial counsel's failure to request a limiting instruction was sound trial strategy.[4] The court noted that J's testimony concerning the petitioner's prior misconduct was brief and not very detailed and indicated that a limiting instruction could have had the effect of highlighting this brief and vague

---

[4] The habeas court also noted that the trial court did not have an obligation, sua sponte, to give a limiting instruction as to the use of prior misconduct evidence. See *State* v. *Cator*, 256 Conn. 785, 800–802, 781 A.2d 285 (2001).

testimony for the jury. Unfortunately, because trial counsel was deceased at the time of the habeas trial, no testimony was presented as to counsel's tactical decisions and trial strategy. Such testimony, however, was not necessary for the habeas court to conclude that the petitioner had failed to rebut the strong presumption that the failure to accept the trial court's invitation to give a limiting instruction was sound trial strategy. On the basis of our review of the record, we agree with the habeas court that the petitioner failed to rebut this presumption.[5] We, therefore, conclude that the court properly found that the petitioner had not satisfied his burden with regard to the deficient performance prong of the *Strickland* test.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] We recognize the petitioner's argument, made in reliance on this court's prior opinion, that the failure to give a limiting instruction was detrimental to the petitioner's right to a fair trial. Specifically, the petitioner argues that "[t]he Appellate Court made a very clear and undisputed finding and determination that the jury would have been misled by its improper use of the uncharged misconduct evidence, in combination with the jury instruction regarding the issue of time."

We note, however, the different procedural posture in which this case is presently before us. Neither this court nor our Supreme Court previously considered the failure of the trial court to give a limiting instruction as to uncharged misconduct in the context of a claim of ineffective assistance of counsel. Neither this court nor our Supreme Court previously considered whether the actions of trial counsel might be considered sound trial strategy and whether counsel's performance prejudiced the petitioner pursuant to the standards set forth in *Strickland* v. *Washington*, supra, 466 U.S. 687.

Applying the highly deferential standard of review to counsel's actions, and judging such actions from the perspective of trial counsel at the time; see *Nieves* v. *Commissioner of Correction*, supra, 51 Conn. App. 621; we agree with the conclusion of the habeas court that trial counsel rendered effective assistance to the petitioner. See id. ("[T]he burden that the petitioner must sustain for a favorable outcome on his ineffective assistance of counsel claim is a higher one than he would have had to sustain had the actual merits of the same issue been raised on direct appeal. . . . A reviewing court must be highly deferential to counsel's decision and judge the action from counsel's perspective at the time." [Citation omitted; internal quotation marks omitted.]).